UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FARZANEH RAZI, individually and as Gaurdian ad Litem for S.J., a minor; MOHAMMADALI JENABZADEH; ELIAS YAZDANSHENAS; SAHARNAZ MONTAZERI; NEGAR SADEGHOLVAD, individually and as Gaurdian ad Litem for B.S.; KOUROSH SEPAHPOUR; ALI VATAN and MOHAMMAD SALEH VATAN,<br><br>                              Plaintiffs,<br><br>v.<br><br>MICHAEL R. POMPEO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF STATE; and DOES #1–#10 who are non–consular officer officials employed by the Department of State, or its contractors such as Quality Support, Inc.,<br><br>                              Defendants. | Case No.:  20–CV–0982–W–MSB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DOC. 8]** |

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*Defs.' Mot. to Dismiss* [Doc. 8].)  The Court decides the matters on the papers submitted and without oral argument.  See Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss [Doc. 8].

I. **BACKGROUND**

Plaintiffs in this case are U.S. citizens and lawful permanent residents ("Petitioner Plaintiffs") and their Iranian relatives ("Beneficiary Plaintiffs") who are visa applicants to the United States. (*FAC* ¶ 5 [Doc. 3].) Beneficiary Plaintiffs have completed the necessary steps of the visa application process to enter the United States but have been denied pursuant to Presidential Proclamation 9645 ("PP 9645"). (*Id.* ¶ 8.) PP 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public–Safety Threats," was signed into effect by President Donald Trump on September 24, 2017, and prohibits the entry of immigrants from certain countries, including Iran, who would otherwise normally be granted a visa. Proclamation No. 9645, 82 Fed. Reg. at 45161–72 (Sept. 27, 2017) [hereinafter PP 9645]. This prohibition is based on the Secretary of Homeland Security's determination that the countries listed in PP 9645 "remain deficient . . . with respect to their identity–management and information sharing capabilities, protocols, and practices. In some cases, these countries also have a significant terrorist presence within their territory." Id.

PP 9645, section 3(c), provides for a waiver process that evaluates visa applicants denied because of PP 9645 on a case by case basis for admission to the United States. Id. Waivers can be administered to applicants who meet the following critera: (1) undue hardship if entry is denied, (2) entry would not threaten national security or public safety, and (3) entry is in the national interest. Id. PP 9645 instructs that "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis" based on these three critera. Id.

Plaintiffs acknowledge that PP 9645 "requires the Secretary of State and the Secretary of Homeland Security to adopt guidance establishing when waivers may be appropriate," (*FAC* ¶ 5 [Doc. 3],) but allege that the current waiver process includes individuals beyond those authorized by PP 9645, (*id.* ¶ 16.) Plaintiffs allege that an entity known as the "PP 9645 Brain Trust" has improperly "extended the authority and

discretion—that PP 9645 granted only with individual consular officers—to consular managers, visa chiefs, consular section chiefs, and/or consular management, the Visa Office and/or Quality Support, Inc. contractors." (*Id.*)  In support, Plaintiffs attached several exhibits and point to information provided in the "Operational Q&A's on P.P. 9645" published by Defendants.  (*Id.* ¶ 94.)  Further, Plaintiffs allege that the current waiver process, which requires individual consular officers to get concurring waiver approvals for the national security waiver standard, "demonstrate[s] Defendants' pattern and policy of unreasonable delay in dealing with waiver adjudication, as well as actions that are arbitrary and capricious." (*Id.* ¶¶ 17–18.)

On May 27, 2020, Plaintiffs filed a Complaint, amended on May 30, 2020, bringing four causes of action.  Plaintiffs claim violations of the Administrative Procedure Act ("APA") under 5 U.S.C. 555(b) for unreasonable delay, (*see, e.g.*, *id.* ¶ 183,) and 5 U.S.C. §§ 706(2)(A) and (D) for an unlawful, arbitrary, and capricious abuse of discretion, (*see, e.g.*, *id.* ¶ 199.)  Plaintiffs also seek mandamus for reasons identical to the APA claims.  (*See, e.g.*, *id.* ¶¶ 210–11, 216.)  Finally, Plaintiffs claim that Defendants' conduct has violated their Constitutionally protected procedural due process rights.  (*See, e.g.*, *id.* ¶¶ 222–24.)

On July 28, 2020, Defendants filed a Motion to Dismiss all four of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  On August 24, 2020, Plaintiffs filed a timely response in opposition and Defendants replied on August 31, 2020.  The matter is now before this Court for determination.

## II.  LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

Rule 12(b)(1) provides a procedural mechanism for a defendant to challenge subject–matter jurisdiction.  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.  Where jurisdiction is intertwined with the merits, we must assume the truth of the allegations in

a complaint unless controverted by undisputed facts in the record." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks, brackets, ellipsis and citations omitted).

A facial attack challenges the complaint on its face. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). But when the moving party raises a factual challenge to jurisdiction, the court may look beyond the complaint and consider extrinsic evidence, and "need not presume the truthfulness of the plaintiff's allegations." See id. Once the defendant has presented a factual challenge under Rule 12(b)(1), the burden of proof shifts to the plaintiff to "furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Id.

### B. Motion to Dismiss for Failure to State a Claim

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non–moving party." Vasquez v. L.A. Cnty., 487 F.3d 1246, 1249 (9th Cir. 2007).

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to rise above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). Well-pleaded allegations in the complaint are assumed true,

but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Leave to amend should be freely granted when justice so requires. See Fed. R. Civ. P. 15(a). However, denial of leave to amend is appropriate when such leave would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996); Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997).

### III. DISCUSSION

#### A. Justiciability

Defendants argue the Plaintiffs' claims are not justiciable because (1) PP 9645 does not provide for a private cause of action, (2) 5 U.S.C. § 701(a) precludes review, and (3) judicial review is precluded by the doctrine of consular nonreviewability and 5 U.S.C. § 702. Based on the following, the Court respectfully disagrees and finds Plaintiffs' claims are reviewable.

The motion to dismiss under Rule 12(b)(1) is **DENIED**.

##### 1. Private Action of PP 9645

Defendants contend that Plaintiffs' claims are precluded from judicial review because there is no available private cause of action to enforce PP 9645. (*Defs.' Mot. to Dismiss* 11:1–3 [Doc. 8].) Defendants argue that Plaintiffs' case attempts to enforce PP 9645, noting that "Plaintiffs repeatedly allege that Defendants' waiver adjudication process violates express terms of the Proclamation." (*Defs.' Mot. to Dismiss* 10:20–21 [Doc. 8]; *See also FAC* ¶¶ 14–18, 81–82, 89, 94, 105, 117, 138 [Doc. 3].) Defendants advise that "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." Chai v. Carroll, 48 F.3d 1331, 1338. Further, PP 9645 expressly states that:

> This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

PP 9645.

Plaintiffs' FAC certainly does take the opportunity to make repeated declarations that Defendants' delegation of review for the national security and public safety prong of the waiver process is unlawful. (*See, e.g.*, *FAC* ¶¶ 193–94 [Doc. 3].) It is unquestionable that Plaintiffs would rather that field "consular officers [were] free to adjudicate waivers" without a concurring or reviewing authority. (*See id.* ¶ 209.) However, a careful reading of the Complaint reveals that Plaintiffs offer this as the explanation for their grievance, not the basis for justiciability. Plaintiffs sufficiently distinguish the alleged unlawful delegation grievance from the basis for this action's justiciability.

For example, the first cause of action for unreasonable delay under 5 U.S.C. § 555(b) might be best stated in paragraph eighteen of the FAC: that the requirement for concurrence demonstrates a pattern and policy of waiver adjudication delays. (*Id.* ¶ 18.) The alleged "unreasonable delay" is the basis of Plaintiffs' legal action under 5 U.S.C. 555(b) and 706(1), while the "pattern and policy" of conduct that is "contrary to PP 9645" is Plaintiffs' explanation. (*See id.* ¶¶ 18, 183, 188–91.) Plaintiffs repeatedly rely on the alleged unlawful review process but are careful not to plead a private action to enforce PP 9645. (*See id.* ¶¶ 182–227.) Whether or not the alleged unlawful review process creates unreasonable delay is a question for analysis under Rule 12(b)(6), not Rule 12(b)(1). See Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(b)(1).

Plaintiffs' second cause of action under 5 U.S.C. § 706(2)(A) and (D) follows a parallel analysis. (*FAC* ¶¶ 192–209 [Doc. 3].) First impression might suggest that Plaintiffs are attempting to enforce PP 9645, but the claim is actually brought under 5 U.S.C. § 706(2)(A) and (D), which make actionable any federal agency activity that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." (*See id.* ¶ 192.) (internal citations

omitted).  The third cause of action, mandamus, is predicated on the first two claims, (*see id.* ¶¶ 210–11,) and is similarly not seeking enforcement of PP 9645, although the language of the FAC certainly hints otherwise, (*see id.* ¶¶ 212–15.)  Finally, the fourth cause of action, procedural due process, is equally absent any attempt to enforce PP 9645. (*See id.* ¶¶ 217–27.)

Although the FAC sometimes blurs the distinction, (*see, e.g.*, *id.* ¶¶ 117–18,) Plaintiffs' claims do not seek to exercise enforceable rights under PP 9645 and are therefore not barred from justiciability as "a private right of action to enforce obligations imposed on executive branch officials by executive orders."  See Chai, 48 F.3d at 1338.

### 2. APA Review

The APA creates a "basic presumption of judicial review [for] one suffering legal wrong because of agency action."  Weyerhauser Co. v. U.S. Fish and Wildlife Serv., 139 S. Ct. 361, 370 (2018) (alterations in original) (quotations omitted).  Defendants argue that APA review is not permitted here because 5 U.S.C. § 701 precludes justiciability where "(1) statutes preclude judicial review" or "(2) agency action is committed to agency discretion by law."  (*Defs.' Mot. to Dismiss* 11:18–20 [Doc. 8]) (quoting 5 U.S.C. §701(a)).  Defendants claim that both limitations apply in this case.  (*Id.* at 11:20.)  First, Defendants contend that PP 9645, which implemented 8 U.S.C. § 1182(f), expressly denies any private right of action and therefore statutorily precludes judicial review.  (*Id.* at 11:20–24.)  Second, Defendants reason that PP 9645 "provides that decision to grant or deny a waiver are committed *entirely* to the discretion of executive branch officers."  (*Id.* at 11:24–26) (citing PP 9645) (alterations in original).

Typically, presidential action is not considered to be subject to APA review.  See Franklin v. Massachusetts, 505 U.S. 788, 801 (1992).  However, the Ninth Circuit has held that "under certain circumstances, Executive Orders, with specific statutory foundations, are treated as agency action and reviewed under the [APA]."  City of Carmel–by–the–Sea v. U.S. Dep't of Transp., 123 F.3d 1142, 1166 (9th Cir. 1997).  PP

1  9645 is built upon the statutory foundation of 8 U.S.C. § 1182(f), which authorizes the
2  President to "suspend the entry of all aliens" by proclamation "[w]henever the President
3  finds that the entry of any aliens or any class of aliens into the United States would be
4  detrimental to the interests of the United States . . . ." 8 U.S.C. § 1182(f). Consequently,
5  this case is reviewable unless specifically precluded by statute. As noted in another
6  Court facing a similar claim, "PP 9645 is not a statute . . . and . . . 8 U.S.C. § 1182(f), the
7  statute under which it was issued, does not preclude APA review of the PP 9645 waiver
8  process." Zafarmand v. Pompeo, No. 20–cv–00803–MMC, 2020 WL 4702322 at *5
9  (N.D. Cal. 2020) (internal citations omitted).

10  Plaintiffs are not contesting Defendants' right to grant or deny a waiver. Rather,
11  Plaintiffs' APA claims rely on the assertion that Defendants are not following their own
12  published procedures. (*See, e.g.*, *FAC* ¶ 18 [Doc. 3].) In other words, Plaintiffs do not
13  argue that Defendants have the right to make the final waiver decision, but that their
14  decision-making process is misaligned with Defendants' own waiver guidelines. (*Id.*)
15  This allegation is reviewable under the precedent set forth in United States ex. rel.
16  Accardi v. Shaughnessy, which held that administrative agencies are bound to follow
17  their own rules and regulations (the "Accardi doctrine"). 347 U.S. 262, 268 (1954). See
18  also Church of Scientology of Cal. v. United States, 920 F.2d 1481, 1487 (9th Cir. 1990)
19  ("Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its
20  own internal operating procedures."); Alcaraz v. INS, 384 F.3d 1150, 1162 (9th Cir.
21  2004) ("[C]ourts have recognized that the so-called *Accardi* doctrine extends beyond
22  formal regulations."). Under the Accardi doctrine, an individual can sue an agency for
23  failure to follow the agency's own rules and procedures. Accardi, 347 U.S. at 268.

24  Defendants next argue that the procedural argument precludes review because
25  "there are no judicially manageable standards" available to determine how the thousands
26  of pending waiver applicants should be prioritized, especially considering the national
27  security and international relations implications. (*Defs.' Mot. to Dismiss* 12:5–14 [Doc.
28  8].) Such a specific task is beyond the scope of this justiciability analysis. Review in this

case is appropriate to determine whether Defendant's are complying with the law and their own procedures and whether that causes "unreasonable delay" or is "arbitrary, capricious, an abuse of discretion," or "without observance of procedure required by law." 5 U.S.C. §§ 555(b), 706(2)(A) & (D). The facts of the case might, as Defendants argue, make the possibility of relief under these two standards impossible, but they do not outright preclude this Court's ability to hear the case.

### 3. Consular Nonreviewability

Defendants put forward that Plaintiffs' claims are subject to the well-established doctrine of consular nonreviewability, (*see Defs.' Mot. to Dismiss* 12:20–21 [Doc. 8]), whereby Federal courts decline to review consular officer decisions. Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th Cir. 1986). This begs the question: is testing the waiver process against the underlying statutory authority and the Accardi doctrine distinct from holding authority over the rendered decisions of a consular officer? Can the former be accomplished without violating the latter? This Court, and others facing the same question, find that it can. See, e.g., Motaghedi v. Pompeo, 436 F. Supp. 3d 1345, 1357–58 (N.D. Cal. 20020); Emami v. Nielson, 365 F. Supp. 3d 1009, 1018–19 (N.D. Cal. 2019); Zamarfand v. Pompeo, No. 20–cv–00803–MMC, 2020 WL 4702332 at *6 (N.D. Cal. Aug. 13, 2020); Darchini v. Pompeo, No. SACV 19–1417 JVS (DFMx), 2019 WL 7195621 at *4 (C.D. Cal. 2019).

Plaintiffs clarify their argument in their Opposition by offering that they "do not claim that any consular official's final decisions to issue or withhold a visa are reviewable." (*Pls.' Opp'n* 9:6–7 [Doc. 9].) Rather, this case is predicated on alleged arbitrary and untimely procedure whereby the consular officer's decision-making discretion is usurped via measures misaligned with agency guidelines. (*See, e.g., id.* 9:3–5 [Doc. 9]; *FAC ¶¶* 105, 117–18 [Doc. 3].) The Foreign Affairs Manual ("FAM"), which is the formal written source documenting Department of State directives, 22 C.F.R. § 11.10(a), provides that all non–qualifying applicants must be automatically considered

for a waiver under PP 9645, which "permits consular officers to grant waivers and authorize the issuance of a visa on a case–by–case basis" when certain conditions are met, 9 F.A.M. 302.14–10(C)(1)(a). Whether or not this process is being administered according to procedure is not precluded from review. See Accardi, 347 U.S. at 268.

### B. Failure to State a Claim
#### 1. Unreasonable Delay

Defendants argue that Plaintiffs have failed to adequately plead unreasonable delay because no nondiscretionary timeline has been violated and none of the alleged delays are unreasonable. (*Defs.' Mot. to Dismiss* 15:16–17; 17:6–8 [Doc. 8].)

PP 9645 was issued under 8 U.S.C. § 1182(f), which serves as a basis for judicial review. See City of Carmel–by–the–Sea, 123 F.3d at 1166. This authorizing statute does not contain any timeline requirements and does not provide any temporal standards to which Defendants' PP 9645 waiver application process can be bound. See 8 U.S.C. § 1182(f). The Accardi doctrine requires that Defendants comply with any timeline requirements set forth by their own regulations and procedures. See United States ex. rel. Accardi, 347 U.S. at 268. This Court has not found any such rules for the waiver process in PP 9645, the related section of the FAM, or any of the exhibits submitted with this action. See PP 9645; 9 F.A.M. 302.14–10(C)(1)(a); (*FAC Ex. A–H* [Doc. 3–1 to –8].) Defendants therefore cannot be found in defiance of their own timing procedures. Finding full adherence to both the authorizing statute and the Accardi doctrine, this Court must address whether the waiver process itself is unreasonably delayed under 5 U.S.C. § 555(b).

The Ninth Circuit uses the standard from Telecommunications Research & Acton Center ("TRAC") v. FCC to determine unreasonable delay under the APA. 750 F.2d 70 (D.C. Cir. 1984); See In re Nat. Res. Def. Council, Inc., 956 F.3d 1134, 1138–39 (9th Cir. 2020); In re a Cmty. Voice, 878 F.3d 779, 783–84 (9th Cir. 2017). Plaintiffs and Defendants both make arguments under this test, (*see Defs.' Mot. to Dismiss* 15:13–15

[Doc. 8]; (*Pl.s' Opp'n* 15:1–3 [Doc. 3],) and recent courts facing similar claims have applied this test and reached different outcomes. Compare Motaghedi, 436 F. Supp. 3d at 1359 (finding that the TRAC factors supported a plausible claim) with Zamarfand, No. 20–cv–00803–MMC, 2020 WL 4702332 at *10. However, application of the TRAC test is not permissible here. In TRAC, the six–factor test was applied only because the Court of Appeals needed to "resolve claims of unreasonable delay in order to protect its future jurisdiction" for a claim on which it was statutorily obligated to review a final decision on the merits. 750 F.2d at 76. Similarly, the Ninth Circuit used the TRAC test in In Re a Community Voice, where the "[C]ourt's jurisdiction to consider [the] petition [was] dependent on [its] jurisdiction to review a final rule." 878 F.3d at 783 ("Any court that would have jurisdiction to review a final rule has jurisdiction to determine if an agency's delay is unreasonable."). The Ninth Circuit has reaffirmed this conditional use of the TRAC test in In re Natural Resources Defense Council, Inc. See 956 F.3d 1134, 1138 (9th Cir. 2020) ("Because we would have jurisdiction to review the EPA's final decision resolving NRDC's petition, we have jurisdiction here.").

This case is distinguishable from the Ninth's Circuit's application of the TRAC test because in this case there is no future final review to protect from an agency's unreasonable delay; the doctrine of consular nonreviewability bars judicial review of the final decision here. See Li Hing, F.2d at at 971. This Court finds no instances, binding or persuasive, where the TRAC analysis has been properly applied to a Presidential Proclamation regarding consular officer decisions.

As noted earlier, the Ninth Circuit has instructed that Presidential Proclamations with a statutory authorization are eligible for APA review. See City of Carmel–by–the–Sea, 123 F.3d at 1166. However, the Ninth circuit appears to limit this basis of review to the application of objective standards found within the Executive Orders themselves. See id. ("[T]here is law to apply, as these Executive Orders set objective standards.") (internal quotations omitted). At least one other court facing a similar claim has observed this guiding precedent. Najafi v. Pompeo, No. 19–cv–05782–KAW, 2020 WL 1067015 at *3

(N.D. Cal. 2020) ("As City of Carmel by the Sea makes clear, however, the executive order itself must set the objective standards.") (internal citations omitted).

This claim's basis for review does not permit an analysis under TRAC and there are no temporal requirements in either the authorizing statute or Defendants' procedural guidelines. Therefore, no action is available to address any facial challenge of unreasonable delay. The motion to dismiss for unreasonable delay is **GRANTED**.

### 2. Arbitrary and Capricious

Defendants argue that Plaintiffs' APA claim under 5 U.S.C. § 706(2)(A) and (D), as well as their mandamus claim[1], should be dismissed because "Plaintiffs fail to identify any source of law preventing consular officers from consulting with and obtaining the approval of supervisors in making waiver determinations, or working with other federal agencies and employees and/or contractors in conducting national–security and public–safety vetting." (*Defs.' Mot. to Dismiss* 19:15–19 [Doc. 8].) Plaintiffs respond that Defendants have "implemented guidance that usurped the authority and discretion granted by the [P]resident to consular officers to determine the national security category . . . and unlawfully designated it to consular managers, visa chiefs, consular section chiefs, consular management, the Visa Office, and even Quality Support, Inc., contractors." (*Pls.' Opp'n* 4:5–8 [Doc. 9]) (internal citations omitted).

The issue turns on the following questions. First, does PP 9645 limit the final authority to grant or deny waivers to the field consular officers at embassies or are other parties permitted in the process? Second, if PP 9645 can include other actors in the waiver process, are the current alleged players permissible under PP 9645, or do they qualify as arbitrary under § 706(2)(A) and (D)?

---

[1] The mandamus claim is an alternate form of relief which the Supreme Court has construed as redundant of a 706 claim. See Independence Mining Co. v. Babbitt, 105 F.3d 502, 507 (9th Cir. 1997).

Once again, the authorizing statute, which creates a basis for review, provides no guidance on this specific issue and cannot be used against Defendants. See 8 U.S.C. § 1182(f). Therefore, the issue will be reviewed for compliance with the Accardi doctrine and the objective standards set forth within the presidential proclamation. See United States ex. rel. Accardi, 347 U.S. at 268; City of Carmel–by–the–Sea, 123 F.3d at 1166. The Ninth Circuit has instructed that "[r]eview under the arbitrary and capricious standard is narrow, and we do not substitute our judgment for that of the agency. An agency decision will be upheld as long as there is a rational connection between the facts found and the conclusions made." Barnes v. U.S. Dept. of Transportation, 655 F.3d 1124, 1132 (9th Cir. 2011) (internal citations and quotations omitted).

PP 9645 grants that: "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited . . . ." PP 9645. Plaintiffs' argument relies on narrowing the definition of consular officer to include only field consular officers on location at embassies and exclude "consular managers, visa chiefs, consular section chiefs, [] consular management, the Visa Office and/or Quality Support, Inc. contractors" from PP 9645's meaning of "consular officer." (*See, e.g.*, FAC ¶ 16 [Doc. 3].)

PP 9645 does not define consular officer, but the Immigration and Nationality Act ("INA") provides: "[t]he term 'consular officer' means any consular, diplomatic, or other officer or employee of the United States designated under regulations prescribed under authority contained in this chapter, for the purpose of issuing immigrant or nonimmigrant visas." 8 U.S.C. § 1101(a)(9). Related regulations add further instruction: "[c]onsular officer, as defined in INA 101(a)(9) includes commissioned consular officers and the Deputy Assistant Secretary for Visa Services, and such other officers as the Deputy Assistant Secretary may designate for the purpose of issuing nonimmigrant and immigrant visas. . . ." 22 C.F.R. § 40.1(d). The statutory and regulatory definitions do

not support Plaintiff's interpretation and and do not exclude consular management, consular section chiefs, visa chiefs, and the Visa Office as consular officers. See 8 U.S.C. § 1101(a)(9); 22 C.F.R. § 40.1(d). Considering the waiver criteria at issue—national security and public safety—it seems especially unpersuasive that PP 9645 intended each individual consular officer at an embassy to grant a final waiver decision given that the entire proclamation is predicated on the difficulty of information gathering from the nations in question. See PP 9645. The inclusion of the reviewing parties, given the offered justification of the need for more information to ensure national security, is neither arbitrary nor capricious under the narrow standard set by the Ninth Circuit. See Barnes, 655 F.3d at 1132 ("An agency decision will be upheld as long as there is a rational connection between the facts found and the conclusions made.").

Defendants are correct that "Plaintiffs fail to identify any source of law preventing consular officers from consulting with and obtaining the approval of supervisors in making waiver determinations, or working with other federal agencies and employees and/or contractors in conducting national–security and public–safety vetting." (*Defs.' Mot. to Dismiss* 19:15–18 [Doc. 8].) Further, PP 9645 permits such a collaborative process. See PP 9645 ("The Secretary of State and the Secretary of Homeland Security shall coordinate to adopt guidance addressing the circumstances in which waivers may be appropriate for foreign nationals seeking entry as immigrants or nonimmigrants."). There is nothing prohibiting the Secretaries of State and Homeland Security from developing a system where applications are reviewed through a hierarchy of consular officers prior to adjudication. See id.; 22 C.F.R. § 11.10(a).

This broad definition of consular officer notwithstanding, Plaintiffs allege that a private contractor, Quality Support, Inc., has been designated authority to adjudicate waiver decisions in violation of PP 9645 and § 706(2)(A) and (D). (*FAC* ¶¶ 196, 209 [Doc. 3].) Defendants do not deny that Quality Support, Inc., falls outside the scope of a consular officer, but argue that "Plaintiffs' claim that Quality Support, Inc., contractors are making final decisions on the national security and public safety prong of the waiver

adjudication is no more than legal, conclusory language that is not entitled to an assumption of truth." (*Defs.' Mot. to Dismiss* 20:25–27 [Doc. 8].) (internal quotations and citations omitted).  In support, Plaintiffs offer Exhibit A, an email with the subject line "RE: Follow up on PP9645 Waiver SAOs – E017 Refusals for Syrian IVO Cases." (*FAC Ex. A* [Doc. 3–1].)  In the email, Kunduz Jenkins, a contractor with Quality Support, Inc., writes to Visa Office employees, stating that "we've sent today refusals under EO17 for the following PP Waiver SAOs back to post: [redacted information] Please let me know if you have any questions!" (*FAC Ex. A* [Doc. 3–1].)  "EO17" is reportedly an automated refusal code in the waiver application software.  (*FAC Ex. D* ¶¶ 42, 46, 48 [Doc. 3–4].)  Plaintiffs argue that this email demonstrates that contractors, rather than consular officers, decided the referenced wavier refusals.  (*FAC* ¶ 110 [Doc. 3].)  Defendants counter that "[t]he email merely indicates that waiver refusals were transmitted and were being stored per records disposition guidelines." (*Defs.' Mot. to Dismiss* 21:4–5 [Doc. 8].)  Whether the email shows that a contractor made waiver decisions or transmitted properly refused waivers for recordation is a question of fact, not properly decided at this stage.  See Vasquez, 487 F.3d at 1249 ("In reviewing such a motion, we accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party.").

Therefore, the motion to dismiss the substantive APA and mandamus claims is **DENIED**.

### 3. Procedural Due Process

Plaintiffs argue that the current PP 9645 waiver process violates both Plaintiffs' statutory rights and their "cognizable liberty interest[s] in the ability of their family members . . . to travel to the United States." (*FAC* ¶¶ 218–19 [Doc. 3].)  Defendants argue that Plaintiffs' claim for procedural due process should be dismissed because the "[FAC] fails to support an inference that any protected liberty or property interest is

implicated, or that there is some additional process they are entitled to but have been denied." (*Defs.' Mot. to Dismiss* 21:14–16 [Doc. 8].)

The Fifth Amendment grants that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The plurality in Kerry v. Dinn found it unobjectionable that "procedural due process rights attach to liberty interests that either are (1) created by nonconstitutional law, such as a statute, or (2) sufficiently important so as to flow implicit[ly] from the design, object, and nature of the Due Process Clause." Kerry v. Din, 576 U.S. 86, 97–98 (2015) (Scalia, J., plurality opinion) (internal citations and quotations omitted).

In Kerry, Plaintiff, a U.S. citizen, complained that her Constitutional procedural due process rights were violated when consular agents failed to disclose specific reasons for denying the visa application for her husband, an Afghan citizen and former civil servant in the Taliban regime. 576 U.S. at 88. Plaintiff claimed that "the Government denied her due process of law when, without adequate explanation of the reason for the visa denial, it deprived her of her constitutional right to live in the United States with her spouse." Id. The plurality decided that "[t]here is no such Constitutional right" and that the argument was "nothing more than a deprivation of her spouse's freedom to immigrate into America." Id. at 88–89. Although this case is distinguishable from Kerry in that these Plaintiffs are challenging the procedure used to execute the waiver application process rather than a final decision, much of the due process reasoning is parallel.

Plaintiffs correctly argue that the Due Process Clause applies to rights afforded by any immigration statutes passed by Congress. (*FAC* ¶ 219.) Here, the statute authorizing PP 9645 does not provide a right to a waiver process. See 8 U.S.C. § 1182(f). This statute, 8 U.S.C. § 1182(f), provides that the President has full autonomy to suspend the entry of any aliens for however long as "he shall deem necessary" so long as entry "would be detrimental to the interests of the United States." Id. Therefore, Plaintiffs have no statutory right to be reviewed for a waiver for which due process is owed. See Kerry, 576 U.S. at 88 ([A]n unadmitted and nonresident alien . . . has no right of entry

into the United States, and no cause of action to press in furtherance of his claim for admission.").

Plaintiffs next attempt to apply the Due Process Clause to the rights conferred from PP 9645 itself, namely the waiver review process, without providing any support for this novel expansion. (*FAC* ¶ 220 [Doc. 3]) ("Individuals must be given due process prior to the deprivation of these statutory and regulatory rights."). As noted earlier, PP 9645 is not a statute. It is not a bill that was approved by vote in Congress and signed into law by the President. See U.S. Const. art. I, § 7, cl. 2–3 ("Presentment Clause"). Therefore, the rights derived from PP 9645 are not subject to the Due Process Clause as statutory rights. See Kerry, 576 U.S. 97–98. Furthermore, PP 9645 itself disclaims the creation of any such rights. PP 9645 ("This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.").

Plaintiffs must therefore allege a violation of due process for a liberty or property interest separate from the repeatedly misstated "statutory right". (*See FAC* ¶¶ 219–20 [Doc. 3].) The substance of Plaintiffs' liberty argument appears to be the denial of their "cognizable liberty interest in the ability of their family members . . . to travel to the United States." (*Id.* ¶ 218). The existence of such a liberty does not exist. See Kerry 576 U.S. 86, 88 (2015) (Scalia, J., plurality opinion) ("There is no such Constitutional right."). The following passage from Kerry is especially persuasive:

> Neither [Plaintiff's] right to live with her spouse nor her right to live within this country is implicated here. There is a simple distinction between government action that directly affects a citizen's legal rights, or imposes a direct restraint on his liberty, and action that is directed against a third party and affects the citizen only indirectly or incidentally. The Government has not refused to recognize [Plaintiff's] marriage to [her spouse], and [Plaintiff] remains free to live with her husband anywhere in the world that both individuals are permitted to reside. And the Government has

not expelled [Plaintiff] from the country."

Id. at 101.

Plaintiffs have failed to properly plead a liberty or property interest for which process is due. The motion to dismiss the procedural due process claim is **GRANTED**.

## IV. CONCLUSION AND ORDER

For the foregoing reasons:

i. Defendants' motion to dismiss is **GRANTED** as to the unreasonable delay and due process claims and **DENIED** as to the substantive APA and mandamus claims. [Doc. 8.]

ii. Plaintiffs will have leave to amend the Complaint. The amended complaint must be filed, if at all, by November 20, 2020.

**IT IS SO ORDERED.**

Dated: October 23, 2020

Hon. Thomas J. Whelan
United States District Judge